**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Atlantic Recording Corporation, et al., ) | No. CV06-02076-PHX-NVW |
| ) | |
| Plaintiffs, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Pamela and Jeffrey Howell, wife and ) husband, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The court has before it Plaintiffs' Motion for Summary Judgment (doc. # 30), Plaintiffs' Statement of Facts supporting the Motion (doc. # 31), Defendant Jeffrey Howell's Response (doc. # 33) and Plaintiffs' Reply (doc # 38). The Motion will be granted for the reasons set forth below.

**I.    Background**

In an effort to reduce online infringement of copyrights they hold to sound recordings of various musical artists, Plaintiffs Atlantic Recording Corporation, Elektra Entertainment Group, Inc., Warner Bros. Records, Inc., Capitol Records, Inc., UMG Recordings, Inc., Sony BMG Music Entertainment, and Arista Records (collectively, the "recording companies") hired an investigation company, MediaSentry, to detect unauthorized distribution and reproduction of the recordings in online file-sharing systems. At 1:52 a.m. Eastern Time on January 30, 2006, MediaSentry detected an individual who had 4,007 files available in a shared folder on the Kazaa online file-sharing system. The investigation showed that 2,329

of the files were sound recordings. The relevant Internet service provider, Cox Communications, Inc., identified the IP address associated with the shared folder as registered to a Pamela Howell in Scottsdale, Arizona. Pamela Howell is Defendant Jeffrey Howell's wife.

During the investigation, MediaSentry took screenshots (images of a computer screen display) showing the contents of the Kazaa shared folder. The folder and the files it contained were registered to the Kazaa username "jeepkiller@kazaa." Jeffrey Howell ("Howell") created both the username and the shared folder after downloading the Kazaa file-sharing program to his previous computer. When he bought his current computer he "networked both the computers together and transferred [his] old files to [his] new computer." (Doc. #31, Ex. 9 at 164.) Thus, at the time of the MediaSentry investigation, Howell's computer had his "entire body of Kazaa downloads on it from [his] old computer" along with additional files he added to the Kazaa collection. *Id.* The files, available to all other Kazaa users for download from the shared folder, included 54 specific sound recordings of musical artists for which the recording companies own valid copyrights.

The recording companies filed this action for copyright infringement against Howell and his wife on August 29, 2006, and now move for summary judgment on that claim, arguing that there is no disputed material fact that Howell violated their exclusive distribution right for the 54 identified sound recordings. Howell, proceeding pro se, denies liability on the grounds that he was at work when the MediaSentry investigation took place, that he owns compact discs containing the sound recordings at issue and "translated" them to his computer for personal use, and that "a malfunction or tampering by a third party is responsible for [those] files being available on the [I]nternet." (Doc. # 33.)

**II.   Standard of Review**

Rule 56(c), Fed. R. Civ. P., provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the

- 2 -

moving party is entitled to a judgment as a matter of law." A "genuine issue" of material fact will be absent if, "viewing the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law." *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308, 1310 (9th Cir. 1977); *see also Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1111 (9th Cir. 2001). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory and speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nature of this responsibility varies, however, depending on whether the movant or the non-movant would bear the burden of persuasion at trial with respect to the issue at hand. If, as here, the burden of persuasion at trial would be on the party moving for summary judgment, that party may satisfy its initial burden of production only by showing that it would be "entitle[d] . . . to a directed verdict if the evidence went uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992); *cf. Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) ("A directed verdict is proper when the evidence permits only one reasonable conclusion.").

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate against a party who "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial." *Celotex Corp.*, 477 U.S. at 322; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmovant's showing of "some metaphysical doubt" as to material facts insufficient); *see also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). Summary judgment is not appropriate when the nonmoving party identifies or produces evidence from which a reasonable juror, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor. *United States v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999).

**III.   Analysis**

Under 17 U.S.C. § 501(a), "[p]laintiffs must satisfy two requirements to present a prima facie case of direct infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.* 239 F.3d 1004, 1013 (9th Cir. 2001). Section 106(3) in turn grants to "the owner of copyright . . . the exclusive rights to . . . distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."

**A.   Plaintiffs Have Established Copyright Ownership**

The recording companies' ownership of valid copyrights to the sound recordings is not in dispute. Affidavits establish that they held valid copyrights effective prior to the date on which the sound recordings were found in the "jeepkiller@kazaa" shared folder. (Doc. # 31, Ex. 4-7.) In his deposition, Howell stated that he "[did not] agree with the law" that the recording companies own the copyrights, but he also "[did not] dispute that they own them." (Doc. # 31, Ex. 9 at 252.) Thus, the first element of the recording companies' claim of copyright infringement has been satisfied.

**B.   Plaintiffs Have Established Copyright Infringement**

Under 17 U.S.C. § 106(3), distribution of copyrighted material need not involve a physical transfer. "[T]he owner of a collection of works who makes them available to the

- 4 -

1  public may be deemed to have distributed copies of the works" in violation of copyright law.
2  *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 718-19 (9th Cir. 2007) (citing *Hotaling*
3  *v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997)).  Thus,
4  in *Napster, Inc.*, users of the online file-sharing program Napster were found to have violated
5  copyright owners' distribution rights by employing "the Napster software to make their
6  collections available to all other Napster users." *Perfect 10, Inc.*, 487 F.3d at 719 (citing 239
7  F.3d at 1011-14).
8        Several cases suggest that Kazaa users commit direct infringement by employing the
9  Kazaa program to make their collections of copyrighted sound recordings available to all
10 other Kazaa users.  In *Arista Records v. Greubel*, 453 F. Supp. 2d 961, 969 (N.D. Tex. 2006),
11 a set of screenshots showing the contents of a defendant's Kazaa shared folder was found to
12 present a cognizable claim for copyright infringement under 17 U.S.C. § 106(3).  *Warner*
13 *Bros. Records, Inc. v. Payne*, 2006 WL 2844415, at *4 (W.D. Tex. July 17, 2006), equated
14 the placement of items in a Kazaa shared folder with "publication" as defined by 17 U.S.C.
15 § 101 because it is a distribution, or an offer of distribution "in which further distribution,
16 public performance or display is contemplated."  It is no defense that a Kazaa user did not
17 directly oversee the unauthorized distribution of copyrighted material.  *Interscope Records*
18 *v. Duty*, 2006 WL 988086, at *2 (D. Ariz. Apr. 14, 2006) (noting that the mere presence of
19 copyrighted sound recordings in a defendant's Kazaa shared folder may constitute copyright
20 infringement).
21       There is no genuine issue of material fact as to the second element of the recording
22 companies' claim of direct infringement via distribution.  Howell admitted in his deposition
23 that the sound recordings were being distributed from his Kazaa shared folder:

> Q: So each of the songs that you acknowledge were on your computer in Schedule 1, Exhibit A, all of which research [sic] – represent subsets of what's in the thicker packet –
> [Howell]: Yes.

- 5 -

> Q: – that was Exhibit B to the complaint[1] and Exhibit 3 to the deposition, are things that you acknowledge that on the date of capture, January 30th, 2006, were seen by plaintiffs as being shared by your Kazaa account?
> [Howell]: Yes.

(Doc. # 30 at 8.)

Howell claims he was at work when MediaSentry took the screenshots showing the contents of his Kazaa shared folder, but presents no admissible evidence to support his claim that he was at work at 11:52 p.m. on January 29, 2006,[2] the time when the distribution was detected. In any event, whether Howell was at work at the time MediaSentry captured screenshots of his Kazaa shared folder is irrelevant when he admitted distributing the sound recordings from his shared folder, and when the mere presence of copyrighted works in a shared folder is enough to trigger liability. *Duty*, 2006 WL 988086 at *2.

Howell also objects to liability on the grounds that he owns compact discs ("CDs") containing the disputed sound recordings and that he "translated" them to his computer for personal use. In support of this argument, Howell attached photographs of CDs and cases to his Response. However, the question is not whether Howell owned legitimate copies of some of the sound recordings on CD, but instead whether he distributed copies of the recordings without authorization. Howell's right to use for personal enjoyment copyrighted works on CDs he purchased does not confer a right to distribute those works to others without Plaintiffs' authorization. 17 U.S.C. § 106(3). As he admitted that the sound recordings were "being shared by [his] Kazaa account," Howell is liable for distributing them in violation of the recording companies' exclusive right. Even if Howell believed that ownership of the CDs conferred a right to distribute their contents freely via Kazaa, that

---

[1] Exhibit B to the Complaint contains the screenshots of the contents of Howell's Kazaa shared folder.

[2] Plaintiffs establish that the MediaSentry investigation detected the "jeepkiller@kazaa" username sharing the sound recordings online at 1:52 AM Eastern Time on January 30, 2006, (doc. # 31, Ex. 11 (Hardwick Decl.) ¶ 9) which would have been 11:52 p.m. Mountain Time on Sunday, January 29, 2006, at Howell's Scottsdale home.

- 6 -

1  mistaken impression is no defense to liability. *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir.
2  1978) ("Indeed, even where the defendant believes in good faith that he is not infringing a
3  copyright, he may be found liable.").

4  Howell's final contention is that a computer malfunction or a third party put his
5  personal files into his shared folder. However, no evidence has been presented in support
6  of that scenario. Because there is no disputed issue of material fact that (1) the recording
7  companies owned valid copyrights for the sound recordings and (2) Howell distributed the
8  sound recordings in violation of the recording companies' exclusive distribution right under
9  17 U.S.C. § 106(3), summary judgment is appropriate as a matter of law.

## IV. Relief Will Be Granted

### A. Statutory Damages

The recording companies have elected to seek minimum statutory damages under 17 U.S.C. § 504(c)(1) instead of proving actual injury. The statute "provides that the author's entitlement, per infringed work, is 'a sum of not less than $750 or more than $30,000 as the court considers just.'" *BMG Music v. Gonzalez*, 430 F.3d 888, 891 (7th Cir. 2005) (quoting 17 U.S.C. § 504(c)(1)). Howell does not dispute the amount of damages requested. The requested statutory damages of $750 per sound recording, a total of $40,500, will therefore be awarded.

### B. Injunction

The recording companies also request an injunction pursuant to 17 U.S.C. § 502(a) prohibiting Howell from further copyright infringement and requiring the destruction of any unauthorized copies of the sound recordings that Howell may hold in any medium. (Doc. # 1 ¶ 20.) Title 17, section 502(a), United States Code, provides that "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." An injunction against a Kazaa user found to have infringed copyrights may be "appropriate to ensure that the misconduct does not recur as soon as the case ends." *BMG*

1  *Music*, 430 F.3d at 893 (affirming a district court order enjoining a defendant from
2  downloading copyrighted sound recordings).

3  Howell's disregard for copyright law suggests that further infringement is likely
4  absent injunctive relief.  An injunction will therefore be entered prohibiting Howell from
5  further distributing the recording companies' copyrighted sound recordings without
6  authorization.

### C. Costs

8  The recording companies also seek, pursuant to 17 U.S.C. § 505, the cost of their $350
9  filing fee.  That section of the Copyright Act provides, in part, that "the court in its discretion
10 may allow the recovery of full costs by or against any party other than the United States or
11 an officer thereof."  17 U.S.C. § 505.  Costs have been awarded in infringement cases to: "(1)
12 deter future copyright infringement, (2) ensure that all holders of copyrights which have been
13 infringed will have equal access to the court to protect their works, and (3) penalize the
14 losing party and compensate the prevailing party."  *A & N Music Corp. v. Venezia*, 733 F.
15 Supp. 955, 959 (E.D. Pa. 1990) (citations omitted).  Costs will be awarded to Plaintiffs in
16 service of these ends.

### D. Marital Community Liability

18 The final issue is whether, under Arizona community property law, Plaintiffs have
19 made a sufficient showing on summary judgment for marital community liability for
20 Howell's tort of copyright infringement.  "There is no presumption of community liability
21 if the [plaintiff's underlying action] is based on alleged tortious conduct."  *Selby v. Savard*,
22 134 Ariz. 222, 229, 655 P.2d 342, 349 (1982).  Thus, a marital community will not be liable
23 for the tort of one spouse "unless it is specifically shown that the other spouse consented to
24 the act" or that the act "was committed with the intent to benefit the community."  *Id.*

25 The recording companies' motion makes no attempt to present facts establishing
26 community liability for Jeffrey Howell's individual liability.  There has been no showing or
27 even argument on this Motion that Pamela Howell consented to Jeffrey Howell's distribution

- 8 -

of the sound recordings or that the distribution was committed with the intent to benefit the marital community.

IT IS THEREFORE ORDERED that the Motion for Summary Judgment (doc. # 30) is granted as against Defendant Jeffrey Howell in the amount of $40,500.00 statutory damages, $350.00 in costs, and for permanent injunction. Plaintiffs shall lodge a form of permanent injunction by September 4, 2007. The motion is denied as against Defendant Pamela Howell.

IT IS FURTHER ORDERED that Plaintiffs advise the court by September 4, 2007, whether they wish to have judgment entered against Defendant Jeffrey Howell and the case terminated, or whether they wish to pursue further proceedings to establish marital community liability.

DATED this 20th day of August 2007.

_____
Neil V. Wake
United States District Judge