1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Atlantic Recording Corporation, et al., | No. CV-06-02076-PHX-NVW |
| Plaintiffs, | **ORDER** |
| vs. | |
| Pamela and Jeffrey Howell, wife and husband, | |
| Defendants. | |

This is a suit for copyright infringement brought by seven major recording companies against Defendant Jeffrey Howell ("Howell"). The recording companies allege that Howell used the KaZaA file-sharing program to download 54 of their sound recordings and to distribute them to other users of the network. The court previously denied the recording companies' Motion for Summary Judgment based in part on Howell's testimony that he had legally purchased the music at issue, that he did not place the recordings in the KaZaA shared folder, that the KaZaA program was making files in other locations on his hard drive available for download without his authorization, and that other users of the computer could be responsible for sharing the music. (Doc. # 91.) However, Howell had not cooperated with the recording companies' proper requests to conduct a forensic examination of his computer hard drive and to produce certain backup media that he supposedly created. (Doc. # 86). The court therefore granted the recording companies' motion to compel that discovery and granted them leave to take additional

1  discovery.  With the benefit of their additional discovery, the recording companies have
2  now moved for terminating sanctions based on Howell's willful spoliation of material
3  evidence.  (Doc. # 103.)[1]

**I. Howell's Willful Destruction of Evidence Demands Terminating Sanctions**

Sanctions, including default judgment, may be imposed against a party who fails to comply with the court's order to provide or permit discovery.  Fed. R. Civ. P. 37(b). Courts also have the inherent power to impose default judgment when "'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings . . . , has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)).  Factors to evaluate when considering default as a sanction include: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.*

Howell has repeatedly destroyed evidence central to the factual allegations in this case.  He admits that he removed the KaZaA program from his computer and deleted the contents of the shared folder shortly after receiving notice of this lawsuit.  (Doc. # 106, Ex. 1 at 105:19–25, 349:19–24.)  Although he testified that he created DVDs to backup his shared folder before he removed it (*id.*), the DVDs he produced in discovery are inaccurate and unworthy of belief.  The DVDs he created are not true backups because

---

[1] The recording companies have also moved to dismiss Defendant Pamela Howell because she and Jeffrey Howell are no longer married.  The recording companies named her as a defendant solely for the purposes of marital community liability.  Pamela Howell has stipulated to dismissal without prejudice.  (Doc. # 113, Ex. B.)  She will therefore be dismissed without prejudice.

- 2 -

they do not contain information about the files' original locations.  Furthermore, the file creation dates for several files on one of the DVDs suggest that Howell created the DVDs well after he removed KaZaA from his computer.  The DVDs also contain files that were not being shared by Howell's computer in January of 2006, so they do not accurately represent the contents of his shared folder at that time. (Doc. # 103, Ex. F at ¶¶ 36–39.) Howell now disavows his previous testimony that the DVDs were created to preserve the evidence.  Instead, he explains that he simply wanted to keep his files for future use. (Doc. # 111, Ex. A at 31:11–21.)  Howell's shifting explanations for creating the DVDs calls his credibility into question, especially given that he is a sophisticated computer user and knows how to make a proper backup disk.  (*Id.*; doc. # 80 at 40:1 to 41:17.)  In any event, the DVDs that Howell created did not preserve the substantial amount of material evidence that he destroyed by uninstalling KaZaA.

The recording companies' forensic examination also shows that Howell reinstalled his computer's operating system on January 2, 2007, a few weeks after he had received their requests for copies of various files on his computer.  (Doc. # 103, Ex. F ¶ 27.) Howell also downloaded a program called Aevita Wipe & Delete in November, 2006, shortly after he filed his answer in this suit.[2]  Then, in the middle of the discovery period, he used that program to permanently delete all traces of certain files on his computer. The Aevita software usually creates a log of the files it has deleted, but in Howell's case,

---

[2]  The program is advertised as follows:

> Aevita Wipe & Delete is a reliable and ultra-fast shredder that will help you securely erase any file or folder without any chances for its recovery . . . the program can erase any file or folder by overwriting it several times, thus rendering it completely unrecoverable even for the most sophisticated recovery software.

(Doc. # 103, Ex. G.)

1  that log is missing.  (*Id.* ¶ 29.)  After taking these steps, Howell testified to facts that
2  could not be disproved because he had destroyed the pertinent evidence.  He swore that
3  none of the music on his computer was downloaded through KaZaA, that none of it was
4  in his shared folder, and that the program was allowing access to other locations on his
5  hard drive.

6  Howell admitted in his deposition and at the August 25, 2008 hearing that he
7  acted with full knowledge of his duty to preserve all of the evidence relevant to the
8  recording companies' claims. (Doc. # 106, Ex. 1 at 105:19–25.)  He explains, however,
9  that he removed KaZaA, reinstalled his operating system, and ran the Aevita software to
10 ensure that KaZaA would no longer function on his computer.  But Howell had the means
11 to prevent KaZaA from continuing to function and also preserve the evidence.  Given the
12 serious claims he was confronting, he would have done so if that evidence was as
13 powerfully exonerating as he describes.  It is implausible that Howell would destroy the
14 only evidence that could exonerate him simply to remove KaZaA from his computer.  It is
15 entirely incredible that his systematic and pervasive destruction of every last bit of
16 evidence pertaining to the claims against him was simply an effort to tidy up his
17 computer.  The timing and character of Howell's actions show that they were deliberately
18 calculated to conceal the truth and that he willfully destroyed evidence to deceive the
19 court.

20 Howell's brazen destruction of evidence has wholly undermined the integrity of
21 these judicial proceedings.  The evidence that Howell destroyed could have been used to
22 determine the origin of the music files, their locations on the hard drive, the settings and
23 integrity of the KaZaA software, and many other relevant facts. Without these facts, the
24 recording companies and the court are unable to examine the factual accuracy of
25 Howell's defenses.  The expert was only able to recover a handful of file references to the
26 shared folder from the unallocated space on Howell's hard drive.  That small fragment of
27 data does not prove or disprove Howell's contention that the sound recordings were not in

his shared folder.  The recording companies' remaining evidence regarding the origin and locations of the sound files is tenuous and circumstantial.  Howell's actions have made it impossible to decide this case on the merits.  The prejudice to the court and to the recording companies is irretrievable.

Such circumstances demand the imposition of a default judgment against Howell.  Imposition of default judgment is an extreme sanction to be used as a last resort, but no lesser sanction will adequately deter the repetition of this kind of easily accomplished and highly prejudicial destruction of evidence.  "One who anticipates that compliance with discovery rules, and the resulting production of damning evidence, will produce an adverse judgment, will not likely be deterred from destroying that decisive evidence by any sanction less than the adverse  judgment he (or she) is tempted to thus evade."  *Computer Assoc. Int'l, Inc. v. Am. Fundware, Inc.*, 133 F.R.D. 166, 170 (D. Colo. 1990).  *See also Arista Records, L.L.C. v. Tschirhart*, 241 F.R.D. 462, 465 (W.D. Tex. 2006); *Cabnetware, Inc. v. Sullivan, 1991 U.S. Dist. LEXIS 20329* at *11–12 (E.D. Cal. July 15, 1991); *Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1456 (C.D. Cal. 1984).  It will not suffice to impose a presumption that the evidence lost was damaging to Howell.  The evidence destroyed here was so central to the allegations in this case that imposing such a presumption would effectively establish his liability.  Imposition of a default judgment is therefore the only appropriate sanction, both for its deterrent effect and to remedy the prejudice inflicted on the recording companies and on the court.

**IV.  Relief Will Be Granted**

    **A.  Statutory Damages**

The recording companies have elected to seek minimum statutory damages under 17 U.S.C. § 504(c)(1) instead of proving actual injury.  The statute "provides that the author's entitlement, per infringed work, is 'a sum of not less than $750 or more than $30,000 as the court considers just.'"  *BMG Music v. Gonzalez*, 430 F.3d 888, 891 (7th

- 5 -

Cir. 2005) (quoting 17 U.S.C. § 504(c)(1)). No evidentiary hearing on damages is necessary because the recording companies seek only minimum statutory damages, and those damages are easily ascertainable from the complaint. *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 63–64 (1st Cir. 2002). The requested statutory damages of $750 per sound recording, a total of $40,500, will therefore be awarded.

### B. Injunction

The recording companies also request an injunction pursuant to 17 U.S.C. § 502(a) prohibiting Howell from further copyright infringement and requiring the destruction of any unauthorized copies of the sound recordings that Howell may hold in any medium. (Doc. # 1 ¶ 20.) Title 17, section 502(a), United States Code, provides that "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." An injunction against a Kazaa user found to have infringed copyrights may be "appropriate to ensure that the misconduct does not recur as soon as the case ends." *BMG Music*, 430 F.3d at 893 (affirming a district court order enjoining a defendant from downloading copyrighted sound recordings). An injunction will therefore be entered prohibiting Howell from further downloading or distributing the recording companies' copyrighted sound recordings without authorization.

### C. Costs

The recording companies also seek, pursuant to 17 U.S.C. § 505, the cost of their $350 filing fee. That section of the Copyright Act provides, in part, that "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C. § 505. Costs have been awarded in infringement cases to: "(1) deter future copyright infringement, (2) ensure that all holders of copyrights which have been infringed will have equal access to the court to protect their works, and (3) penalize the losing party and compensate the prevailing party." *A &*

*N Music Corp. v. Venezia*, 733 F. Supp. 955, 959 (E.D. Pa. 1990) (citations omitted). Costs will be awarded to Plaintiffs in service of these ends.

IT IS THEREFORE ORDERED that the Motion for Terminating Sanctions (doc. # 103) is granted as against Defendant Jeffrey Howell, his answer to the complaint is stricken, and default judgement will be entered against him for $40,500.00 in statutory damages and $350.00 in costs and for a permanent injunction.

IT IS FURTHER ORDERED that Plaintiff's Motion to Dismiss Pamela Howell Without Prejudice (doc. # 113) is granted.

IT IS FURTHER ORDERED that, upon entry of the separate Judgment and Permanent Injunction this day, the Clerk shall terminate this action.

DATED this 29th day of August, 2008.

Neil V. Wake
United States District Judge

- 7 -